IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| James Serfass and Joan Serfass, ) | |
| ) | Civil Action No. 8:07-90-WMC |
| Plaintiffs, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| The CIT Group/Consumer Finance, Inc., ) | |
| ) | |
| Defendant. ) | |
| ) | |

The plaintiff homeowners filed a complaint against the defendant mortgage lender alleging (1) failure to record a mortgage satisfaction; (2) negligent misrepresentation; (3) violation of the Fair Credit Reporting Act; (4) violation of the Fair Debt Collection Act; and (5) violation of the Real Estate Settlement Procedures Act ("RESPA"). On February 7, 2008, the Honorable G. Ross Anderson, Jr., United States District Judge, entered an order granting the defendant's motion for summary judgment on the claims for failure to satisfy mortgage, negligent misrepresentation, violation of the Fair Credit Reporting Act, and the Fair Debt Collections Act. Judge Anderson found as follows:

> The Serfasses have not paid CIT in full for the mortgage. Although initially credited to their account, their February payment was returned for insufficient funds, and they have never made that payment. The Serfasses admit they received a refund of $1,220.08 for SunTrust's improper double debit of their January payment. They also admit that the check for the February payment was never paid and was returned for insufficient funds.
>
> The testimony of the Serfasses' bank SunTrust also indicates that the Serfasses did not make their final mortgage payment. SunTrust's manager Terrance Asalone, testified that the January payment (check number 2078) was paid to CIT only one time. Then, SunTrust improperly debited that check a second time. That money was later refunded to the Serfasses

> and did not go to CIT. SunTrust's vice president of operations Lisa Jenkins testified that no one was paid twice on the January payment (check 2078), and the February payment (check 2099) bounced and was never paid to CIT. She also testified that CIT did not cause SunTrust to debit the Serfasses' account twice on the January check.
>
> As a result, the mortgage with CIT has still not been paid in full.

Judge Anderson's Order, 2/7/08, at pp. 3-4. The court denied the motion as to the RESPA claim "because CIT did not respond in writing to the request made by the Serfasses' attorney." *Id.* at p. 6. Judge Anderson found that the plaintiffs' attorney sent the defendant a letter dated July 26, 2006, to which the defendant did not respond in writing. "However, CIT investigated the Serfasses' claims as required by RESPA, CIT called the Serfasses' lawyer to explain the problem, and CIT called the Serfasses to explain the problem. CIT did not, however, send a specific response to the attorney's letter." *Id.* at p. 7. Judge Anderson further noted:

> The Serfasses may go forward on this claim to the extent that they are able to show economic harm as a result of not receiving a written explanation of the amount due on their loan. *See Katz v. Dime Savings Bank*, 992 F. Supp. 250 (W.D. N.Y. 1997) (borrower must show some actual economic harm from the lenders' failure to send a written explanation).

*Id.*

The case was referred to this court for disposition on April 23, 2008, upon consent of the parties pursuant to Title 28, United States Code, Section 636(c), and Local Rule 73.01(B), DSC, by order of Judge Anderson. As set forth above, the only issue left for trial was the damages for the defendant's RESPA violation for failing to send Mr. Serfass a written explanation of the amount due on the loan. A bench trial was held on August 18, 2008. After hearing the evidence and testimony submitted by the parties, this court makes the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

1. The plaintiff homeowner Mr. Serfass obtained an adjustable rate home mortgage loan from defendant in September 2005. Mrs. Serfass was not a borrower but signed the mortgage because they both owned the home.

2. The first mortgage payment of $1,220.08 was due November 1, 2005, and payments were due the first of each following month. The Serfasses made their payments for November and December 2005, as well as their January 2006 payment (check number 2078). The Serfasses sent check number 2099 for their February 2006 payment. On February 28, 2006, Mr. Serfass completed a refinance transaction to pay off this loan and obtain a fixed rate mortgage loan. CIT credited the Serfasses' account for the February 2006 payment and then supplied a corresponding payoff statement requested as part of the refinance. After supplying the payoff statement, CIT received notice that the Serfasses' February payment was returned for insufficient funds. Thus, the Serfasses' payoff was short in the amount of one payment.

3. The Serfasses' February payment was dishonored for insufficient funds by their bank, SunTrust. The Serfasses' account did not have sufficient funds to honor the check because SunTrust debited their account twice for their January mortgage payment (check number 2078). Though the account was debited twice, CIT did not receive double payment. On May 11, 2006, SunTrust refunded the Serfasses' account for the improper debit calling it a "processing discrepancy correction." According to SunTrust, the double debit of the Serfasses' account was caused by a banking error – not by CIT[1]. Once SunTrust refunded the $1,220.08 to the Serfasses' account, that money was available to the Serfasses to use as they wished. This final mortgage payment has not yet been paid by the Serfasses.

---

[1]The banks involved were not named as defendants in this action.

4. Because the mortgage was one payment short, the defendant sent collection notices to Mr. Serfass. The defendant also reported late payments on Mr. Serfass' account.

5. The plaintiffs sent three faxes that were received by the defendant on March 16, 2006, June 15, 2006, and July 6, 2006. All the faxes included Mr. Serfass' name and account number and provided sufficient detail to the lender regarding the information sought, with attached copies of their bank account statements detailing the mortgage payments deducted from their bank account and the name and telephone number of the closing attorney who made the payoff.

6. The defendant's call log reveals numerous telephone calls between Mr. Serfass and the defendant regarding the unpaid balance. Prior to the homeowner's third request on July 6, 2006, the defendant's call log noted on July 3: "ADV MR TO FAX NECC INFO TO GET RSLVD THIS MTH – OTHERWISE WLD CONT TO EFFECT HIS CREDIT ALONG W ADD EXPNS – SD WLD GET INFO FROM BANK AGAIN TDY AND FORWARD TO CIT ASAP." The defendant's telephone call log indicated that it understood the homeowner's requests and his concerns about his credit. The call log also indicates that the defendant investigated Mr. Serfass' complaint and called both Mr. Serfass and his lawyer, Floyd Mills. The defendant explained to the plaintiff on several occasions that it had not received payment on the same check twice and that the plaintiff needed to check with his bank since this was a bank error (def. ex. 3).

7. The plaintiffs retained an attorney to send two letters to the defendant dated July 26, 2006, and September 11, 2006. One of the attorney's letters stated in relevant part:

> Per my letter dated July 26, 2006 and our subsequent conversations, we are trying to provide your company with all the necessary information that they need to understand the problem they have created. Up until this point we have been patient and continue to be in an effort to get this problem

> resolved. However, it is my understanding all these enclosures have already been provided to you and your efforts seem to be more of a stall tactic than a resolution. . . . We ask that you please put this account on hold as there is a dispute as to the amount and stop reporting this to the credit bureaus as it is ruining my clients' credit over an error your company made. . . . They have disputed this from the beginning and your company has not even paid them attention or provided them with answers, other than constantly requesting previously provided information.

(Pl. ex. 7). The letters did not mention that the Serfasses' checking account had been refunded by SunTrust on May 11, 2006, for the improper debit of check number 2078. The attorney who sent the letters testified at trial that the defendant did not respond to his first letter, so he telephoned the defendant to follow up on his request. The attorney sent additional documentation the lender requested in the telephone calls and a second letter dated September 11, 2006, but the defendant still did not respond to his request.

        8.     At trial, Mr. Serfass testified that no explanation of the amounts due would be sufficient for him. Mr. Serfass testified at trial that he had incurred actual damages of between $50,000 and $100,000 as a result of the defendant's violation of the RESPA. However, the plaintiffs failed to show any evidence that they suffered economic harm as a result of not receiving a written explanation of the amount due on the loan.

## **CONCLUSIONS OF LAW**

        1.     The RESPA provides as follows with regard to the duty of a loan servicer, like the defendant, to respond to borrower inquiries:

> (e) Duty of loan servicer to respond to borrower inquiries
>
> > (1) Notice of receipt of inquiry
> >
> > > (A) In general
> > > If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan,

>the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.
>
>(B) Qualified written request
>For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
>>(i)  includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>>
>>(ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.
>
>(2) Action with respect to inquiry
>Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--
>
>>(A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>>
>>(B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>>
>>>(i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

>>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

>> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

>>> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

>>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

> (3) Protection of credit rating
> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of Title 15).

12 U.S.C. § 2605(e).

    2.    The statute provides for damages in the case of an action by an individual of "(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 U.S.C. § 2605(f)(1).

    3.    Judge Anderson's Order, which stands as the law of this case, states that the plaintiffs may go forward at trial on the RESPA claim "to the extent they are able to show economic harm as a result of not receiving a written explanation of the amount due on their loan." Judge Anderson's Order, 2/7/08, at p. 7.

4.	The defendant did not send a specific written response to the plaintiffs' five qualified written requests.

5.	The plaintiffs failed to "show economic harm as a result of not receiving a written explanation of the amount due on their loan." *See* Judge Anderson's Order, 2/7/08, at p. 7. Mr. Serfass and his attorney received oral explanations of the amount due on the mortgage. Mr. Serfass received written statements showing the amounts due, and he received bank statements showing his February payment was returned for insufficient funds (pl. ex. 10).

6.	While the plaintiffs failed to establish actual damages, this court finds that the defendant's failure to respond to the plaintiffs' five qualified written requests establishes a "pattern or practice of noncompliance with requirements of this section" of RESPA. *See Ploog v. Homeside Lending, Inc.*, 209 F.Supp.2d 863, 869 (N.D. Ill. 2002) (finding that the plaintiff's evidence of five instances in which the defendant failed to respond to her qualified written requests was sufficient for the plaintiff to recover statutory damages for a "pattern or practice of noncompliance").

7.	Neither the Supreme Court nor any circuit courts have yet addressed the issue, but district courts considering the issue have held that a plaintiff can recover statutory damages no greater than $1,000 by proving a pattern or practice of noncompliance.[2] *See, e.g., Ploog.,* 209 F.Supp.2d at 869; *Katz v. Dime Savings Bank, FSB*, 992 F.Supp. 250, 258 (W.D. N.Y. 1997).

---

[2] The plaintiffs cite the case of *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp.2d 1156 (M.D. Ala. 1999) for the proposition that statutory damages of $1,000 under Section 2605(f)(1)(B) are available for each violation of the act (pl. proposed findings at p. 9). However, the court did not consider whether statutory damages were available because the plaintiffs in that case did not claim they were entitled to statutory damages. *Id.* at 1164 n.6.

**CONCLUSION**

For the foregoing reasons, the court finds in favor of the plaintiffs on the statutory violation of RESPA and awards the plaintiffs $1,000 in statutory damages. The plaintiffs did not prove actual damages as a result of the defendant's failure to send a written explanation of the amount due on the loan.

IT IS SO ORDERED.

s/William M. Catoe
United States Magistrate Judge

September 10, 2008

Greenville, South Carolina